Next case is In Re Roger Youman and Marnie Morris, 2011-11-36. We'll hear from Mr. Rogers when you're ready.  This case presents the question of law. What is surrendered subject matter in the context of re-issuing a recapture rule when a claim limitation has been added or amended during the original prosecution to avoid prior art? We are not aware of any cases of this court which says that simply by virtue of a claim amendment that the scope of the surrendered subject matter is the territory between the claim as it pre-existed and the amended claim after the amendment. We are not aware of any authority either of this court which says that it is per se impermissible to ever amend, on re-issue, to ever broaden a claim limitation that had been modified during prosecution to avoid prior art. But look, you had a granted claim. In order to get it granted, you added the cycling limitation from when it was originally filed. You did so because of the re-prior art. So you gave up the subject matter that didn't include cycling. And then you come in with a re-issue. And you want to change cycling to changing, which is broadening. Why aren't you, in effect, trying to reclaim what you gave up and put the cycling limitation in? Because the scope of surrendered subject matter is defined by what you have admitted in original prosecution to have been in the prior art. That which you say is not patentable. That's what the Clement case says. That's what Pannu says. That's what the Mastovizadeh case was based upon. No, it's not so much what's in the prior art, although that's usually the reason. It's what was in the original application, which you had to add and give up in order to get allowance. What you give up when you add a limitation to an original claim is the scope of the original claim. It's the scope of the original claim, which in this case did not have anything to do with how you selected characters, didn't have cycling, didn't have changing, just said select characters. The scope of the original claim, by virtue of the amendment, is what is the surrendered subject matter. Then you add additional limitations. But the adding of the additional limitation, simply by adding them, is not the surrendered subject matter. Yes, that's what you've added in that particular case to get around prior art. But the admission you've made, if you had an application that claims 1 to 100 in the prior art, or for whatever reason, say 95, and you cut back to 80, and then you file a reissue and you want to go to 90, you have surrendered from 100 to 80, and now you're trying to get a partial part of it back by going to 90. No, you have not surrendered to 80, because that was the error. Under this scenario, Judge, that you just raised, no attorney, no one prosecuting a patent application, could ever honestly overshoot the mark, I think, as the Richmond case said back in 1969. An attorney, somebody prosecuting a patent application, might honestly and inadvertently narrow the claim too much. That is correctable by reissue, as long as surrendered subject matter is not reclaimed. Again, in the case you mentioned, if you claim up to 100, and then there's prior art that shows 90, and you modify that to 80, what have you admitted, flat out, is not patentable? You've admitted that up to 100 is not patentable by virtue of the claim amendment. You said, I cannot get a claim directed to up to 100. That's the surrendered subject matter. Now, we go further. The next step is, you say, well, now let's say you go back to 90, because you went too far by claiming to 80. Claiming to 80 isn't a surrender. The surrender was to 100, you go back to 90. The second step is, you look at the argument. It's not from 100 to 80, because that was the error. You went too far. So, when you try to reissue to go back to 90. So, we're really looking at step three. I got a bit confused by the arguments in the brief, because your step two arguments didn't quite absorb them. But with respect to claim three, then, as I understand it, your position is, if the reissue limitation is broadened relative to the issued claim, but still narrowed relative to the original claim, then that's the area that you get. That's correct, because it's surrendered subject matter. Absolutely, and absolutely consistent. There's no case which says that the territory between the original claim and the claim after amendment is the surrendered subject matter. There is no case that says that. In fact, the cases say the opposite. Clement says the opposite. In this case, 100 minus 80 amounts to the surrender of 20. Isn't it very plain? What it amounts to is an inadvertent over-narrowing of the claim. Well, whether it's inadvertent or not, narrowing is a surrender. Narrowing is not in the context of the recapture law, because there's no admission there. If coupled with the actual amendment, an argument had been made to the examiner which said, I cannot get a claim better than 80, then the argument can be viewed as a surrender. But I'm talking about you simply amend the claim. We don't add the gloss of an argument yet. Simply amending the claim to find the surrendered subject matter, the case law says, and the case law is fully consistent. Clement, Panu, Mostefizadeh, they're all saying the same thing. The concept of surrendered subject matter is based on an implied admission that what you are giving up is unpatentable to you. And that, says Clement, and that said the BPAI Eggert case in 2003, that is the scope of the original claim before amendment. But the public that sees you went from 100 to 80, do they have to look and find out why you surrendered it? See whether it was a mistake? Well, we're assuming, of course, the prosecution was open to the public. But after the patent is issued, the statute… You're assuming you're in the two-year period. Yes, assuming, and we are in this case within the two-year period. There's no question about that. Well, going back to the two-year, I mean, I thought that was what you would have responded to Judge Lurie, which is why I'm kind of questioning now what I'm thinking about this. Because Judge Lurie is absolutely right, is he not, with respect to a regular case. I thought the only argument you have is there's a reissue statute. We have, yes. And that gives you the special rule that applies to all applications, right? I mean, even though there's no prosecution, somebody can come in within two years if there's an error or whatever, and they can broaden it. So that I understood what you were saying to be that rule is the exception, the reissue rule. We're not going to recapture yet. We're in reissue. That's why we're talking about this at all. Yes, that's correct. You certainly don't have the right to go back and get back what you already gave up in prosecution under any other circumstances. Right, but Section 251 allows one to reissue and broaden the claims within the two-year period, and there is the judicially added issue of surrendered subject matter. That is not by statute, that's by case law. And then the question simply is, what did you surrender? And once you've properly identified what's been surrendered, then you can look to see whether or not in the third step of the claimant or the patent analysis, it's stated various ways. But in essence, in the third step, the question is, have you, in your reissue claim, modified the claim so as to recapture surrendered subject matter? Has the surrendered subject matter crept back into the claim? That's the test at its heart. And so you must identify the recaptured via surrendered subject matter. And Massa Vizetis recognizes that even a claim limitation that has been amended on the original prosecution can be modified on reissue. And the question in the third step is, has the claim limitation that's been modified still materially narrowed the claimed invention relative to the subject matter? In the reissue, did you narrow the claim in some other respect? Yes. In the reissue, what was there? And there are two things to look at in the original prosecution. So that even if you, I don't want to take advantage of your drinking here. I shouldn't have done that. So that even if you did narrow it and then expand it, the fact that you added other limitations in the reissue meant that overall the claim wasn't broadened. Is that your point? No. You have to have added or revised, amended that limitation with respect to the surrendered subject matter. What the North American container says is that in that case it was an extraneous narrowing related to diameter having nothing to do with the issue of surrendered subject matter. And the court said, well, if you look at the claim as a whole, to be of intermediate scope, that's not the issue and that's irrelevant. What counts is did you narrow the reissue claim in other respects? Even though you modified it relative to the surrendered subject matter, did you modify the claim properly as the Mazda Zeta Court says you can do? And in this case, that's what happened. In this case, and it's not just cycling. The original claim was yes, cycling was added. But Claim 23 was added with changing originally in the prosecution. So it's not just cycling. So let's look at changing or cycling. It doesn't matter which. In the reissue claims, we took those limitations and they were modified to say changing using non-alphanumeric keys. The original claim was changing using up-down keys or cycling forward and backwards using remote control. But now it's a modified limitation, broadened to be sure relative to the issued claims, but modified to say changing using the non-alphanumeric keys. Now let's look at the surrendered subject matter. The original surrendered subject matter was just changing. Not how, just changing. That's the original claim. We've come back and we've modified it, but it still materially narrows. The reissue claims still materially narrow the surrendered subject matter because they specify how the selection is made. Not just that there's a selection made. So they continue to narrow the claims. There's no issue about these claims avoiding the prior art because the read patent, the prior art read patent, had a full type of alphanumeric keyboard. And there's no issue about argument here conceding the full scope of surrender being the issued claim because the argument didn't say cycling was the invention or that changing using up-down keys was the invention. The argument was those were examples.  The invention was argued using the remote control, not having additional keys, not having a full alphanumeric keyboard. And that's precisely what these reissue claims are focused on. They are tied well with the arguments that were argued in the original case, the original prosecution. These limitations continue in step three of the Clement or Pannu analysis to continue to narrow the claim in material ways relative to the surrendered subject matter. You're saying here the board here was looking at the patented claims for the surrendered subject matter. Correct. And if you take that to its logical extreme, what is the board saying? They're saying that once you have a claim that's been amended during prosecution, which most are frankly, you can never ever broaden that amended claim even if you made a mistake, even if instead of being 100 you went down to 20 in the example of Judge Lurie. To its logical extreme, the board's position, its per se rule will carve out of the reissue statute any possibility of reissue when an attorney over-narrows a claim on amendment innocently. Why don't we save the rest of your time for you? I think it's apparent here that either the USPTO or Heumann is misreading this court's case law. We have totally divergent views. Before we get into the case law, I'm eager to hear from you, but I just want to see if I understand. Because the problem I have is that in every case and in every brief, there's a statement of these three steps, and they all use a few different words. Is the issue joined, as you understand it, between Mr. Yeoman and the PTO over whether or not materially narrowing under step three refers to a materially narrowing of the issued claims, as Judge Shaw pointed out, or as Mr. Yeoman would say, of the original claims? So it's sort of like we're all agreeing what the words of the test are, but how the test is applied. And that's where the MPP and Mr. Yeoman and what he says is the case law applies. Are we all on the same wavelength? I think that's right with one minor tweak, Your Honor. I think we agree that if it's the patented claims, we win. If it's the original claims, he likely wins. But the one tweak is whether you look at the analysis under prong two or prong three of the three-prong recapture test. Yeoman seems to point to the surrendered subject matter and says that the subject matter is not surrendered. I mean, I didn't quite necessarily have – I don't think you need to agree with that to get you to step three, in his view of step three, which says material narrowing deals with the original. In our view, it is best understood or best considered under prong three, the material narrowing. I happen to agree with you. But, okay, so now I'm sorry. I interrupted you. So that's where the issue is joined. So please tell us what the case law says with respect to that question of whether we look back to the original or the patented claim. We think that Mostafazadeh is the most clear case on point. Mostafazadeh says at page 1360 that it, quote, presents a recapture, close quote, where a reissue applicant seeks to make a limitation that was added during the original prosecution, quote, less restrictive. That does not – that's looking at the amended or the patented claim as it has been amended and whether that claim in the patent is being made less restrictive or not. It's not looking at the original claim. I don't think there's any question here that an original application claim cannot be. This is under section two, the second paragraph after the block quotation from the NPEP. It starts with a citation to the NPEP, section 1412.02. It says the reference to broadening the added limitation or broadening the surrendered subject matter is confusing. It could mean that the limitation is less restrictive or it could mean – This is referring to the procedure, the manual. Correct. But the court is interpreting it. It's saying that this language could mean that the limitation is less restrictive or it could mean that it is more restrictive. And the court holds the former, where the limitation is less restrictive, it presents a recapture, while the latter does not. But what about the discussion at 1358 through 1359, down at the bottom of 1358, where it says violation of the rule against recapture may be avoided under this final step. This is the creep-in step of the analysis. If the reissued claims materially narrow the claims relative to the original claims, such that full or substantial recapture of the subject matter surrendered during prosecution is avoided, that seems to be looking back to, I guess, what Mr. Rodgers said, the original claim. Right. We were – Excuse me. Are those originally filed claims or originally granted claims? Well, the court seems to distinguish in Mostafasa between original claims being the originally filed claims and the patented claims being the ones that ultimately are issued in the patent. This seems to be referring back to the original filed claims. Well, it says materially narrow the claims relative to the original claims. So the original claims are, to be sure, a relevant consideration in the process, but it is not saying that only the original claims need to be narrowed for there to be a recapture. I think what – In other words, you can't go back. If you gave up, if you started here and then you had to give up this much based on prior art, not voluntarily, you can't go back and recapture what was otherwise determined to have been covered by prior art. So you can recapture the surrendered subject matter up until the point which it bumps up on the prior art. At least that's my read of it. So tell me why you disagree. Well, I think what the court says is – part of our discussion is what the surrendered subject matter is and what it is not. And I think the court is making very clear in Mostafasa that what is surrendered is the added claim limitation. So the thing that was added to the patented claim, and it does that when it discusses the facts of Mostafasa. It does that when it discusses the facts of North American Container, and again when it discusses Panu, all on pages 1358 to 1359. Now, to be sure, the court, in part three of the opinion, when the court considers whether or not the materially narrowing step is met here, it does at least consider the prior art. And I think that is why we're looking at Reed. And in our view, there is absolutely no way that the claims as drafted in the reissue are patentable over Reed. The only distinction Yeoman points out is that Reed only used the arrow keys to select a single letter, whereas – Well, that's fair enough. But what I understand – I mean, for us, at least for me, it's kind of a two-part inquiry. We've got to figure out what the test is, and there's a distinction between the test. Whether at the end of the day, even if the board's test was wrong and there's some other reading, I mean, I'm not prepared to make a determination at least. But that goes to the second question, right? Your answer is even if we were to apply a test where you can get back surrendered subject matter up until the prior art, you're saying that he doesn't even do that successfully. That's right. And I also think that there is at least some – The board didn't make its decision on that, right? No, that's correct, Your Honor. The board made its decision on its broad reading in the MPP. And I do want to point out, though, Your Honor, that it's not entirely clear to us that this analysis with respect to the prior art is the pertinent analysis. At page 1359 of the opinion, and this is a couple paragraphs before Section 2 begins, it says there that the applicants in Moss Deposita argue that narrowing is material – Hold on one second. Let me just find the language we're talking about. 359? What page in the – It's at page 1359 and it's – First full paragraph on the right column, right? I actually have a Westlaw printout here, not the – Well, I have the board's opinion. Where in the board's opinion are we? I'm referring now to the Moss Deposita decision. Oh, I see. And it's a paragraph that is two paragraphs above Roman numeral 2. And it begins, the applicants argue that narrowing is material where the additional claim limitations, quote, render an otherwise invalid claim valid, close quote, whether or not the narrowing is related to the surrounding subject matter. And it says the applicants misinterpret Hester in making this argument. It holds that we do not suggest that the materiality of the allegedly narrowing limitations was determined by whether the limitations rendered the claims patentable. Were there narrowing limitations here? There – In addition to changing cycling to changing? Well, there were narrowing limitations, but they related to different portions of the claim, not this – Right. The surrounding subject matter. It was really a different issue, right? As I think Ms. Gongola and I remember well that argument. I was on the panel. I recall that, Your Honor, and I recall Ms. Gongola arguing the case, and I'm not sure that she would agree. I'm not sure that I agree. Well, that was about more about narrowing in other respects. This is – I mean, I'm not asking you or her to agree. But look at the language on 361, that first paragraph. It's discussed above where Judge Dyke, I think, is summarizing it all. And he says the recapture rule is violated when a limitation adding during prosecution is eliminated entirely, even if other narrowing limitations are added to the claim. Yes, because if it's eliminated entirely, then you're going to obviously recapture the prior art. Correct. So if the added limitation is modified but not eliminated, the claims must be materially narrowed relative to the surrendered subject matter so that the surrendered subject matter is not entirely or substantially recaptured. He's talking about the area between the original claim and the reissue. And he's saying that you can't do it more than – you can't entirely go back to the original claim because obviously there was a problem in the prior art. So you can go back substantially. We can quibble about what substantially means if it means up to the limit of the prior art or something else. I see that. And it does say that the – Is that on behalf of the Patent Office? No, I think the Patent Office agrees that one cannot entirely recapture. And the Patent Office's interpretation of this is that one also cannot substantially recapture. One can recapture – It's a limitation of substantial, anything more than you already gave up, whereas I think I'm reading this to say substantial means it's relative to the original claim, not to the haptic claim. Yes, Your Honor. Although what is taking me away from that is if – in prong three in the North American container case says that the final step is to determine whether the reissue claims were materially narrowed in other respects. What page on – This is at page 1349 in North American container. The first paragraph under invalidity. So step three, finally we determine whether the reissue claims were materially narrowed in other respects so that the claims may not have been enlarged and hence avoid the recapture rule. And the claims that may not have been enlarged that North American container is talking about is the patented claims, which is what it refers to in prong one. It says the original patent claims are the focus of this inquiry. Are you saying, Mr. Weber, there's a conflict between Mustafa Zeyda and North American container? I don't think there's a conflict. I think that what – the way the PTO is reconciling these cases is that substantial recapture is when you try to go back in a substantial way and recapture basically anything that you gave up. And there may be situations where this materially narrowing prong is in fact a safety valve. And unfortunately this court has actually never found that prong to be met. And we tried to give some guidance in the MPP and this court said that it was the wrong guidance and we appreciate that. MPP used to be much different, right? Yes, it did. And then after North American, based on the way you construed North American, you changed it, right? Yes, Your Honor. Let me just go back to what you were reading in North American. And so in prong three, the use of the word claims, you were saying that that is a reference to the original claims or to the reissued claims or to the patented claims? What the language North American container uses in prong one is the original patent claims and that is how we're reading the word claims in the remainder of that sentence. And I know that's confusing because Mastafazadeh talks about original claims and patent claims. The original patent claims may not have been enlarged. Yeah, we're going back to the original claims. The patent claims. The original patent claims. So Mastafazadeh would call those the patent claims, not the original claims. And this has both words in it, but the claims and the patents. It has to be the patented claims because those claims reflect what was given up. Exactly, Your Honor. And the purpose of this recapture analysis, as this court held in or as this court at least discussed in Mentor, is that the reissued statute cannot be construed in such a way that competitors properly relying on the prosecution history become patent infringers when they do something and then recapture comes behind them. And that was exactly the situation that the Supreme Court was concerned about in the Bridgeport-Grass decision that referred to the evil of this practice. Mastafazadeh seems to be talking about the claims during prosecution. Don't you agree? It does talk about the claims during prosecution. In the paragraph that I guess Judge Prost read to you at the top of 1361, that seems to be talking about the claims during prosecution. And that would mean that – put it this way. Did the board in this case, the one before us, follow the analysis outlined in that paragraph? No, Your Honor. It followed the North American container analysis because this decision, the Mastafazadeh decision came out after the board decision in that case. The board did rely on the board's decision of Mastafazadeh which was affirmed in Ray Mastafazadeh. Now, if this is the rule, the paragraph there, the board didn't – I realize it didn't have the opinion. The board didn't follow that approach in this case, right? The board did not consider the Reid prior art specifically and figure out whether it had captured enough. That's correct, Your Honor. It didn't look at the original prosecution claim. It did look at the original prosecution claim and looked at the patented claim as well and considered the surrendered subject matter to be the difference between those two. And then as far as the materially narrowing prong, it didn't look at whether the recapture was going back all the way to the prior art. It was looking at whether the recapture was – But I didn't see the board doing what's described here. I think the board did, in fact, look at what was – Well, if we concluded that it didn't, should we send it back to the board? I think that if the court were to determine that the board had improperly applied prong two of this court's test, it would have to go back. No, prong three. It would be prong three, wouldn't it? That's the one where – You're talking about materially narrowing? Materially, yes. So, yes, the board – I mean, I thought in this case that – when I looked at the case, I thought the board seemed to do prong one and two. But then where we seemed to have a difference between what the board did and what Mustafazadeh said was with respect to prong three. Right. With respect to prong three, the board looked at whether there were overlooked aspects, which it was taking from this court's decision in Hester. Okay. And that was akin – If you say that was incorrect, then is your view we should send it back to look at prong three under Mustafazadeh? Well, I don't think there's any need to send this case back, Your Honor, because I think it is clear that even under – even if this court's analysis of substantial re-narrowing looks at the scope of the prior art, I think it is abundantly clear that the only distinction Yeoman argues between the reissue claim and the prior art is that more than one letter is selected using the process in re-narrowing. Well, it shouldn't – well, that may be, but shouldn't the board in the first instance decide that? I think that if this court were to decide that the board should do that, then it would have to remand, obviously. But I think that it, as a matter of law, can determine that. But didn't the board find that we do not find the claim fought to be materially narrowed in other respects? Yes, Your Honor. It considered that? Yes, it did, Your Honor. And it devoted several pages of its opinion to considering the materially narrowing in – Prong three. Prong three, and whether or not the recapture was entire or substantial. Thank you very much, Mr. Lightenfellow. Thank you. Mr. Rogers has a little rebuttal time and takes three minutes. Thank you. Thank you, Judge Lurie. Let me just focus on this prong two, prong three analysis. The first prong says, has the claim been broadened? The second prong says, has it been broadened relative to surrendered subject matter? And then the third prong says, has it been otherwise materially narrowed in respect of – So you need – we need to look at prong two because we need to identify what is the surrendered subject matter here. And it's important, I think, to go back to Clement. Because in the Clement case, it's very – It did relate to surrendered subject matter. If the surrendered – yeah, but it was on the limitation with respect to how. Yeah. Right. And so the surrendered subject matter did not include how. The surrendered subject matter was simply selecting characters. And, yes, the modified limitation says how to select those characters. So it comes down to prong three, doesn't it, of the test? Once you identify the surrendered subject matter correctly, because if you misidentify the surrendered subject matter, how are you going to determine whether or not you've materially narrowed the surrendered subject matter? Your main point is you compare it with the original – The preamendment. Preamendment. Yes, because we'll get past the original problem in the language. Yes, the preamendment claim. And if I might, let me go back to what Clement says, because Clement clearly says that the surrendered subject matter says the second step is to determine whether the broader aspects of the reissued claims relate to surrendered subject matter. And then it goes on and says, although the recapture rule does not apply in the absence of evidence that the applicant's amendment was an admission that the scope of that claim was not, in fact, patentable, deliberately canceling or amending a claim in an effort to overcome a reference strongly suggests that the applicant admits that the scope of the claim before the cancellation or amendment is unpatentable. That's the surrendered subject matter by virtue of an amendment, and then you look to see whether the argument pushed that surrender further along. And so then you look to the Mastiff-Azeda case, and the court focused on two important passages. And indeed, this passage in Mastiff-Azeda, which says, the question is whether the reissued claims materially narrow, step three, the claims relative to the original claims such that the full or substantial recapture of the subject matter surrendered during prosecution is avoided. Those original claims it's talking about here are the original prosecution claim, the claim before amendment. That's what Clement said. This court never said anything different. Eggert analyzed all this and recognized that. And certainly nothing in Mastiff-Azeda changes the law. If it did, this would have been an en banc decision. And then the language the court focused on about the limitation may be modified, however, so long as it continues to materially narrow the claim scope relative to the surrendered subject matter, not relative to the claim as amended. The test focuses on surrendered subject matter, and that's the key to this case. To find that correctly, we submit there's been no recapture here, because all we've done is modify the claims, maintain their narrowness relative to the surrendered subject matter. The claims still say how to select characters. The original subject matter did not. They're still narrowed relative to the surrendered subject matter. You're saying you don't think the case needs to go back. If one agrees with you as to your view of what's surrendered subject matter, namely the Part 3 analysis, you're saying it doesn't have to go back to the board for further work? I think it does not have to go back to the board in that case, correct. Because once you identify the surrendered subject matter, I believe the Patent Office would agree that, in fact, the claims are narrower today relative to the original claims precisely at the point of surrendered subject matter. Thank you, Mr. Rogers. We cannot recapture any time here. We have concluded. Thank you, Your Honor. Thank you, Mr. Member of the House. All rise. The Honorable Court is adjourned today. Thank you, Your Honor.